UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EVOLUTION FAST FOOD ONE, LP,<br><br>          Plaintiff,<br><br>-against-<br><br>HVFG, LLC and LA BELLE FARM, INC.,<br><br>          Defendants. | Case No. 15-cv-06624 (JLR)<br><br>**OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

On the menu in this action is a long-running dispute between a vegan restaurant in California and two duck farms in New York over the sale of foie gras from force-fed geese or ducks. Defendants move to dismiss Plaintiff's Second Amended Complaint with prejudice. For the following reasons, the motion is GRANTED.

## BACKGROUND

### I. Factual Background

The following facts are taken from the Second Amended Complaint and assumed to be true for purposes of this motion. ECF No. 104 (the "Second Amended Complaint" or "SAC"); *see Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016).

Evolution Fast Food One, LP ("Plaintiff") owns and operates a restaurant in San Diego, California. SAC ¶¶ 1, 10. Its "primary business" is "making and selling healthy and sustainable food." *Id.* ¶ 6. Plaintiff sells food produced "without cruelty to animals, using plant-based ingredients" that are all-natural and mostly organic. *Id.* ¶ 11. HVFG, LLC and La Belle Farm, Inc. (together, "Defendants") are based in upstate New York. *Id.* ¶¶ 7-8. They produce and sell foie gras, an appetizer dish typically made through the process of force-feeding ducks such that

1

their livers grow to a "grossly enlarged" size. *Id.* ¶ 12; *see id.* ¶¶ 7-8 (describing this force-feeding as Defendants' "primary business").

Because of this process, Defendants' foie gras is "over 85% fat" and "bears no resemblance to ordinary liver or any ordinary meat product." *Id.* ¶ 15. Due to foie gras's "soft, buttery texture, Defendants are able to misrepresent foie gras as being part of lighter, less meat-centered cuisine." *Id.* ¶ 20. Therefore, "[t]here is mass confusion in the culinary community about how foie gras is produced, with the result that it is frequently sold at restaurants that specialize in sustainable, free range and even vegetarian foods." *Id.* ¶ 17. Defendants market foie gras to restaurants, like Plaintiff's, that "promote ethical and sustainable eating." *Id.* ¶ 14.

Because of Defendants' "false claims and marketing of foie gras" to sustainability-focused restaurants, together with foie gras's similar texture to plant-based food, Plaintiff claims it "must educate consumers on the facts about this product and why it is . . . contrary to rather than consistent with Plaintiff's mission and vision." *Id.* ¶ 18. The "vast discrepancy between how Defendants produce" foie gras and "how the culinary community often perceives foie gras" has forced Plaintiff "to expend resources explaining the truth to consumers." *Id.* ¶ 21. Plaintiff quantifies its monetary losses through the "diversion of staff time and resources, and printing costs for making information available." *Id.* ¶ 18.

Plaintiff brings one count of unfair business practices against Defendants under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL"), alleging that Defendants engage in unfair competition by continuing to "sell and ship foie gras to restaurants in California, thereby violating" California's ban on the sale of foie gras. *Id.* ¶ 3; *see id.* ¶¶ 23-31. Plaintiff seeks injunctive relief against Defendants and attorneys' fees. *Id.* at 7.

## II.     Procedural History

The procedural history in this case requires context from related litigation in California. Under Section 25981 of the California Health and Safety Code, "[a] product may not be sold in California if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size." Cal. Health & Safety Code § 25982 (the "California sale ban"). In January 2015, a federal district court in California enjoined enforcement of the statute, finding it preempted by the federal Poultry Products Inspection Act. *See Ass'n des Éleveurs de Canards et d'Oies du Québec v. Harris* (*Éleveurs I*), 79 F. Supp. 3d 1136, 1147-48 (C.D. Cal. 2015), *rev'd in part, vacated in part sub nom. Ass'n des Éleveurs de Canards et d'Oies du Québec v. Becerra* (*Éleveurs II*), 870 F.3d 1140 (9th Cir. 2017).

Believing *Éleveurs I* to be "incorrectly decided," Plaintiff brought this action in the United States District Court for the Southern District of California against Defendants in May 2015, alleging Defendants' violation of the UCL based on predicate violations of New York's general animal-cruelty law and the California sale ban. ECF No. 1 ¶ 59. Plaintiff amended its complaint on August 7, 2015. ECF No. 25. In August 2015, the case was transferred to the Southern District of New York. ECF No. 26. In September 2015, Defendants moved to dismiss the First Amended Complaint. ECF No. 38.

On September 15, 2017, the Ninth Circuit vacated the *Éleveurs* district court's injunction, holding that federal law did not preempt the California sale ban and that California was free to enforce it. *Éleveurs II*, 870 F.3d at 1153. The Ninth Circuit remanded the case to the district court for further proceedings consistent with its opinion. *Id.*

On September 27, 2017, this Court granted in part and denied in part Defendants' motion to dismiss. *See Evolution Fast Food Gen. P'ship v. HVFG, LLC*, No. 15-cv-06624 (DAB), 2017 WL 4516821 (S.D.N.Y. Sept. 27, 2017). The Court dismissed Plaintiff's claims to the extent

that they relied on violations of New York state law but allowed claims predicated on California's sale ban to proceed. *See id.* at *5-6. In May 2018, the Court stayed this case pending the outcome of further proceedings in the *Éleveurs* case. *See* ECF No. 73 at 2.

On remand from the Ninth Circuit, the *Éleveurs* district court in July 2020 issued a declaratory judgment, holding that an out-of-state seller does not violate the California sale ban when it sells foie gras, shipped through a third-party delivery service, to in-state recipients. *Ass'n des Éleveurs de Canards et d'Oies du Québec v. Harris* (*Éleveurs III*), No. 12-cv-05735, 2020 WL 5049182, at *3-5 (C.D. Cal. July 14, 2020), *aff'd sub nom. Ass'n des Éleveurs de Canards et d'Oies du Québec v. Bonta* (*Éleveurs IV*), 33 F.4th 1107 (9th Cir. 2022).[1] The Ninth Circuit affirmed the district court's declaratory judgment in May 2022. *See Éleveurs IV*, 33 F.4th at 1123 ("[T]he district court's order properly permits out-of-state sales.").

In September 2022, this case was reassigned to the undersigned. ECF No. 80. The Court lifted the stay in this case on November 10, 2022. ECF No. 90. In December 2022, Plaintiff sought leave to file a second amended complaint. *See* ECF No. 95-1. Because Plaintiff did not submit a memorandum of law with its request, the Magistrate Judge in this case "denied without prejudice" Plaintiff's motion for leave. *See* ECF No. 97. In February 2023, Plaintiff renewed its motion for leave to file a second amended complaint. *See* ECF No. 98. The Magistrate Judge granted the motion, ECF No. 101, and Plaintiff filed its Second Amended Complaint – the operative complaint – on March 11, 2023.

---

[1] The district court also denied a motion for reconsideration, which raised a dormant Commerce Clause issue not relevant here. *Éleveurs III*, 2020 WL 5049182, at *2.

On March 28, 2023, Defendants moved to dismiss the Second Amended Complaint. ECF No. 110 ("Br."). Plaintiff opposed the motion on April 10, 2023. ECF No. 113 ("Opp."). Defendants replied to Plaintiff's opposition on April 18, 2023. ECF No. 114 ("Reply").

On February 22, 2024, the Court requested supplemental letter briefing on whether Plaintiff has Article III standing. ECF No. 119. The parties thereafter provided that supplemental briefing. ECF Nos. 120-21.[2]

Defendants' motion to dismiss is now fully briefed and presently before the Court.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But the court shall not "accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Determining whether a complaint states a claim is "a

---

[2] Plaintiff also included in its supplemental briefing, for the first time, a request for judicial notice of documents purportedly showing Defendants' shipments of foie gras to California restaurants, as well as a request to transfer the case back to the Southern District of California. ECF No. 120 at 4. The Court declines to consider these requests, which fall outside the limited scope of the supplemental briefing ordered. *See Freidus v. ING Groep, N.V.*, 543 F. App'x 92, 93 n.1 (2d Cir. 2013) (summary order) (declining to consider arguments raised in supplemental briefing that appellant failed to raise in his initial brief); *Cesar v. Barr*, 779 F. App'x. 824, 825 (2d Cir. 2019) (summary order) (declining to consider issues first raised in post-argument supplemental briefing).

5

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Challenges to a plaintiff's standing to bring a claim are properly addressed under Rule 12(b)(1). *All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 88 n.6 (2d Cir. 2006). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In resolving a motion to dismiss for lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings. *Id.*

## DISCUSSION[3]

Defendants move to dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(6) for lack of statutory standing and failure to state a claim. The Court addresses Plaintiff's standing to bring this case before reaching the merits.

### I. Standing

The Court begins its analysis by distinguishing Article III standing from statutory standing. The former is a constitutionally imposed limit on a federal court's "power to hear a case." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) (quoting *Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 81 (2009)); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Statutory standing, by contrast, is a somewhat misleading

---

[3] Defendants requested oral argument on the motions via notation on their brief. *See* Br. In an exercise of its discretion, the Court denies that request because oral argument would not be helpful to the Court. *See AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 226 (2d Cir. 1999) (noting that "a district court's decision whether to permit oral argument rests within its discretion").

term because it refers to a nonjurisdictional inquiry that does not implicate "the court's statutory or constitutional *power* to adjudicate the case." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (emphasis in original) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 642-43 (2002)); *see also Do No Harm v. Pfizer, Inc.*, --- F.4th ----, 2024 WL 949506, at *4 n.4 (2d Cir. Mar. 6, 2024). Instead, it concerns whether a plaintiff "has a cause of action under the statute." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark*, 572 U.S. at 128). Therefore, a "lack of *statutory* standing requires dismissal for failure to state a claim, while lack of Article III standing requires dismissal for lack of subject matter jurisdiction." *In re CarLotz, Inc. Sec. Litig.*, 667 F. Supp. 3d 71, 76 n.2 (S.D.N.Y. 2023) (citation omitted). This distinction matters not only because of a court's "independent obligation to examine [its] own jurisdiction," *United States v. Hays*, 515 U.S. 737, 742 (1995), but also because the distinction bears on the preclusive effect of the court's decision, *see All. for Env't Renewal*, 436 F.3d at 88 n.6 (noting that, unlike a dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1), "a typical dismissal under Rule 12(b)(6), *i.e.*, for failure to state a claim, is an adjudication on the merits with preclusive effect.").

   A. **Applicable Law**

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case – in other words, standing." *Id.* (quotation marks and citation omitted). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* "A plaintiff pursuing

7

injunctive relief may not rely solely on past injury, but also must establish that 'she is likely to be harmed again in the future in a similar way.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)).  At all stages of litigation, "'the party invoking federal jurisdiction bears the burden of establishing the elements' of Article III standing." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (brackets omitted) (quoting *Lujan*, 504 U.S. at 561); *see Calcano*, 36 F.4th at 75 (even "at the motion to dismiss stage, the plaintiff still 'bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" (alteration adopted) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015))).

Where, as here, Plaintiff is an entity, standing may be established "in one of two ways: by establishing so-called 'associational' or 'representational' standing to sue on behalf of its members, or by establishing that it was directly injured as an organization." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021).  Here, Plaintiff does not assert representational standing, and alleges only direct injury to itself as an organization.  To succeed on that theory, "the organization itself must meet the same standing test that applies to individuals." *N.Y. C.L. Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012) (brackets, quotation marks, and citation omitted).  "An organization can satisfy the injury prong if it shows that the challenged action did not merely harm its 'abstract social interests' but 'perceptibly impaired' its activities." *Conn. Parents Union*, 8 F.4th at 173 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).

There are several avenues for an organizational plaintiff to show an Article III injury.  First, "a defendant's conduct that frustrates an organization's mission can, on its own, constitute an injury in fact for Article III standing when the organization devotes resources to combatting

the conduct." *Hous. Rts. Initiative v. Compass, Inc.*, No. 21-cv-02221 (SHS), 2023 WL 1993696, at *6 (S.D.N.Y. Feb. 14, 2023); *see Ctr. for Food Safety v. Price*, No. 17-cv-03833 (VSB), 2018 WL 4356730, at *4 (S.D.N.Y. Sept. 12, 2018) ("courts in this Circuit have held that an organization has standing where the defendant's conduct interferes with or burdens the organization's ability to carry out its usual activities.").

Second, an organization can establish injury where it "has averred that it needed to divert resources from other activities to address the harm caused by a defendant's conduct." *Compass, Inc.*, 2023 WL 1993696, at *7. "A diversion of resources injury-in-fact requires two elements: (i) the plaintiff organization determines that challenging or addressing the defendant's conduct is reasonably tied to the organization's ability to fulfill its mission or carry out pre-existing activities, and (ii) the plaintiff organization diverts resources away from *specific* other initiatives in order to challenge or otherwise address the defendant's conduct." *Id.* (citing *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 447 (2d Cir. 2021)); *see Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay* ("*Centro*"), 868 F.3d 104, 110-11 (2d Cir. 2017) (diversion-of-resources injury may come in the form of an organization "force[d] . . . to divert money from its other current activities to advance its established organizational interests" or where an organization has to spend "money to combat activity that harms its organization's core activities" (quotation marks and citation omitted)).[4]

B. Analysis

Here, Plaintiff argues that Defendants' sale of foie gras to California purchasers inflicted economic harm through the "diversion of resources and frustration of [Plaintiff's] mission."

---

[4] An injury in fact may also exist "where a defendant's conduct plausibly increases demand for an organization's services." *Compass, Inc.*, 2023 WL 1993696, at *9. However, Plaintiff does not argue that Defendants' conduct increased demand for its services.

9

Opp. at 11. Plaintiff's theory of injury is that, by "continuing to sell foie gras from force fed ducks in California," Defendants have "confused" "many consumers . . . about whether the livers sold by Defendants are made by force feeding," SAC ¶ 27, obligating Plaintiff to "incur[] monetary costs in diversion of staff resources and printing information for consumers explaining that the foie gras sold by Defendants is still made by force feeding," *id.* ¶ 28; *see id.* ¶ 19 ("Defendants are working against Plaintiff's mission via illegal means and making it more difficult for Plaintiff to message its purpose and goals and achieve them.").

      The Court does not agree that there is Article III standing here because Plaintiff has not plausibly alleged an injury through any of the avenues available to it as an organizational plaintiff. As to its mission, Plaintiff alleges only that it has owned and operated a restaurant for the "past 12 years," SAC ¶ 10, and that its "primary business . . . is making and selling healthy and sustainable food," *id.* ¶ 6. Nothing in the Second Amended Complaint explains how Defendants frustrated this mission or otherwise hurt Plaintiff's restaurant by selling foie gras in California. Although Plaintiff alleges elsewhere that its "purpose is to educate the public about animal cruelty and the harmful impacts factory farming has on the environment and human health," *id.* ¶ 19; *see* ECF No. 120 at 2 (noting Plaintiff's "mission of promoting cruelty-free food"), it does not state that educational outreach was one of its "usual activities," *Ctr. for Food Safety*, 2018 WL 4356730, at *4, or even that it conducted such outreach before Defendants started selling foie gras in California. Indeed, Plaintiff's status as a "limited partnership" that owns and operates a for-profit restaurant distinguishes it from other organizational plaintiffs found to have standing after alleging a defendant's interference with their mission. *See, e.g.*, *Centro*, 868 F.3d at 110 (nonprofit entity focused on protecting the rights of Latino immigrant workers suffered injury in part due to challenged ordinance's effect on organizing, one of the

entity's primary "responsibilities" (brackets and citation omitted)); *Compass, Inc.*, 2023 WL 1993696, at *12 & n.23 (finding that nonprofit housing watchdog group adequately alleged frustration of organizational mission to promote fair housing opportunities and preserve affordable housing in New York City).

      Nor has Plaintiff adequately pleaded injury from the diversion of its resources.  While Plaintiff alleges that it diverted "staff time and resources" to educate consumers about foie gras, SAC ¶ 18, it does not describe any "*specific* other initiatives" from which it diverted resources "in order to challenge or address" Defendants' conduct, *Compass, Inc.*, 2023 WL 1993696, at *7; *see Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 129-30 (2d Cir. 2020) (affirming finding of perceptible impairment where defendant's conduct required one of plaintiff's staff members to "spend twice as much time servicing [certain] clients . . . leaving less time for [the plaintiff's] other clients" (brackets and quotation marks omitted)); *Conn. Citizens Def. League*, 6 F.4th at 447 (organization failed to show perceptible impairment by "fail[ing] to identify any current activities from which it diverted resources in order to pursue those efforts" (quotation marks and citation omitted)).  Plaintiff also does not explain why diverting these resources was reasonably tied to its core activities of making and selling healthy and sustainable food.  *See Centro*, 868 F.3d at 110-11 (finding injury where challenged ordinance "will force [the organization] to divert money from its other current activities to advance its established organizational interests").  Even construing the record in Plaintiff's favor, as it must, the Court concludes that Plaintiff incurred its costs to advance its own "abstract social interests," *Havens Realty*, 455 U.S. at 379, not to "combat activity that harms its . . . core activities," *Centro*, 868 F.3d at 111 (quotation marks and citation omitted); *see Conn. Parents Union*, 8 F.4th at 174 ("[E]xpenditures or other activities, if incurred at the organization's own initiative, cannot

11

support a finding of injury – that is, when the expenditures are not reasonably necessary to continue an established core activity of the organization bringing suit, such expenditures, standing alone, are insufficient to establish an injury in fact for standing purposes."). Therefore, Plaintiff has not established an injury.

Even if Plaintiff adequately pleaded an injury in fact, the Court also concludes that this injury is not fairly traceable to Defendants. The causation requirement is not met where the injury "results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 42 (1976). Plaintiff takes issue only with Defendants' sale of foie gras into California; it does not allege an injury in fact from any false advertising or misrepresentation. *See* Opp. at 13 (deeming "irrelevant" Defendants' "discussion of false advertising and misrepresentations" because those claims are "not part of the SAC"). Unclear, however, is how the sale of foie gras, without more, caused Plaintiff injury. Plaintiff does not explain why it "*must* educate consumers" about foie gras, SAC ¶ 18 (emphasis added), or why it bears any obligation as a restaurant to correct "mass confusion in the culinary community" about foie gras, *id.* ¶ 17. To the extent that its alleged injury is causally linked to public confusion about foie gras, Plaintiff does not specify how Defendants, by selling foie gras, confused the "culinary community about how foie gras is produced." *Id.* Instead, Plaintiff stakes its standing theory, without explanation, on the additional inference that Defendants' conduct somehow contributed to that general confusion that triggered Plaintiff's costs. Because Plaintiff is so removed from the conduct it challenges, the Court finds its purported injury too attenuated to confer standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.").

These deficits in Plaintiff's causation argument underscore the Court's doubts that a favorable judicial decision would likely redress Plaintiff's alleged injury. *See Lujan*, 504 U.S. at 561 ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" (quoting *Simon*, 426 U.S. at 38, 43)). Plaintiff attributes the public's confusion about foie gras not only to Defendants' conduct but also to "the fact that foie gras is not recognizable either in appearance or name as liver . . . and is actually more similar to a plant-based food because of its soft texture that is not meat-like." SAC ¶ 18. Even if the Court enjoined Defendants from selling foie gras in California, foie gras's "soft, buttery texture" will continue to allegedly confound potential consumers, and the alleged need for Plaintiff's educational outreach will persist. *Id.* ¶ 20. In other words, resolving Plaintiff's purported problem would require changing the very nature of foie gras itself, not merely who sells it.

For all these reasons, the Court holds that Plaintiff lacks organizational standing, and it dismisses the Second Amended Complaint for lack of Article III standing.[5]

## II.  Leave to Amend

Plaintiff requests leave to file a Third Amended Complaint. Opp. at 16. "Once a responsive pleading has been filed, [the] plaintiff may amend the complaint only with leave of court." *Cerni v. J.P. Morgan Secs. LLC*, 208 F. Supp. 3d 533, 543 (S.D.N.Y. 2016) (citation

---

[5] Plaintiff also claims it suffers a "competitive disadvantage" due to Defendants' conduct because it "must sell its legal and ethically produced food items in the same marketplace as Defendants' illegally produced foie gras." SAC ¶ 29; *see* Opp. at 12. To the extent that Plaintiff asserts competitor standing under Article III, Plaintiff does not explain how, as a restaurant in California, it competes with Defendants – two foie gras producers in New York. Nor does Plaintiff clarify how it has been injured through competition either with Defendants or with the restaurants to which Defendants sell foie gras. An unspecified competitive disadvantage, without more, does not establish standing. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 99 (2013) (rejecting plaintiff's theory that, under the competitor standing doctrine, "a market participant is injured for Article III purposes whenever a competitor benefits from something allegedly unlawful").

omitted). Under Rule 15(a)(2), leave to amend a complaint shall be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Motions for leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

The Court denies Plaintiff leave to file a Third Amended Complaint because Plaintiff has not suggested any amendment that would cure its Article III standing issue. Amendment would also be futile for two additional reasons. First, Plaintiff lacks statutory standing under the UCL. Second, Plaintiff's two theories of liability under the UCL fail as a matter of law.

### A. Statutory Standing

The statute's private right of action authorizes suit by "a person who has suffered injury in fact and has lost money or property as a result of . . . unfair competition." Cal. Bus. & Prof. Code § 17204. To satisfy the UCL's standing requirements, a party must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim." *Kwikset Corp. v. Sup. Ct.*, 246 P.3d 877, 885 (Cal. 2011).

The requirements for statutory standing under the UCL are similar, if not "more stringent than the federal standing requirements." *Troyk v. Farmers Grp., Inc.*, 90 Cal. Rptr. 3d 589, 625 n.31 (Ct. App. 2009). The UCL's injury-in-fact requirement "has the same meaning as it does

14

for Article III standing." *City of Long Beach v. Total Gas & Power N. Am., Inc.*, 465 F. Supp. 3d 416, 448 (S.D.N.Y. 2020), *aff'd*, No. 20-2020, 2021 WL 5754295 (2d Cir. 2021); *see Kwikset Corp.*, 246 P.3d at 885 (applying the federal standard in defining this element of the UCL). However, the UCL's requirement that a plaintiff's injury involve lost money or property "embrac[es] . . . fewer kinds of injuries" than the federal injury-in-fact requirement does. *Kwikset Corp.*, 246 P.3d at 886. "[L]ost money or property – economic injury – is itself a classic form of injury in fact," and "the quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact." *Id.* Meanwhile, the statute's "as a result of" prong "requires a showing of a causal connection or reliance on the alleged misrepresentation." *Id.* at 887 (citation omitted). "In effect, the statute incorporates ordinary principles of actual and proximate causation." *City of Long Beach*, 465 F. Supp. 3d at 448.

Therefore, for substantially the same reasons that Plaintiff lacks Article III standing, the Court holds that Plaintiff also lacks statutory standing under the California UCL. To the extent that Plaintiff suffered a loss of money "sufficient to qualify as injury in fact," it has not adequately alleged that its economic injury was "caused by" Defendants' "unfair business practice." *Kwikset Corp.*, 246 P.3d at 885.

### B. Merits

California's UCL prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because [this statute] is written in the disjunctive, it establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 185 (Ct. App. 2007) (citation omitted). An alleged act need only violate one of these three prongs to violate the UCL. *See id.* ("An act can be alleged to violate any or all of the three prongs of the UCL – unlawful, unfair, or fraudulent.").

"To state a claim under the UCL's 'unlawful' prong, 'a plaintiff must plead, inter alia, a predicate violation of an underlying law.'" *Evolution*, 2017 WL 4516821, at *3 (quoting *Wang v. Bear Stearns Cos. LLC*, 14 F. Supp. 3d 537, 552 (S.D.N.Y. 2014)).  "Under the 'unlawful' prong, 'the UCL borrows violations from other laws [b]y making them independently actionable as unfair competitive practices.'" *Id.* (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003)).

Here, Plaintiff brings its UCL claim by pleading the violation of the California sale ban. *See* SAC ¶ 30.  Plaintiff claims that Defendants have engaged in an unlawful business practice, "both directly by shipping and selling foie gras to California consumers, as well as by knowingly and intentionally acting as accomplices to California restaurants violating the ban." *Id.*  Each theory of liability fails as a matter of law.

    1. Direct Liability

Plaintiff's direct-liability claim fails because the Ninth Circuit has already held that an out-of-state seller does not violate the California sale ban by selling and shipping foie gras to California customers.  *See Éleveurs IV*, 33 F.4th at 1119-21 (rejecting argument that the "sales ban prohibits out-of-state vendors' sales to California buyers, even when order and payment is processed outside the state and the only in-state conduct is third-party delivery to (or transportation by) the consumer").  Plaintiff acknowledges that *Éleveurs IV* applies to this case, arguing instead that the Court should decline to follow its holding.  *See* Opp. at 6-10; ECF No. 91 at 15:22-16:10 (acknowledging that *Éleveurs IV* "holds that out-of-state sales of foie gras into California are permitted" but arguing that "it was a wrongly decided decision").

A federal court exercising diversity jurisdiction should give "conclusive deference" to "a ruling by a court of appeals deciding the law of a state within its circuit." *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 279 (2d Cir. 1981). As the Second Circuit explained:

> A federal court in another circuit would be obliged to disregard a state law holding by the pertinent court of appeals if persuaded that the holding had been superseded by a later pronouncement from state legislative or judicial sources, or that prior state court decisions had been inadvertently overlooked by the pertinent court of appeals. . . . Where, as here, the pertinent court of appeals has essayed its own prediction of the course of state law on a question of first impression within that state, the federal courts of other circuits should defer to that holding, perhaps always, and at least in all situations except the rare instance when it can be said with conviction that the pertinent court of appeals has disregarded clear signals emanating from the state's highest court pointing toward a different rule.

*Id.* at 83 (citation omitted).

In interpreting the California sales ban as applied to out-of-state sellers, the Ninth Circuit decided a state-law question of first impression. *See Éleveurs IV*, 33 F.4th at 1121 ("The California Supreme Court has not yet decided what constitutes a sale under the sales ban, so we must predict how it would answer the question."). In arguing that the Ninth Circuit's *Éleveurs IV* decision was wrongly decided, Plaintiff does not cite any case from the California Supreme Court or otherwise suggest that the Ninth Circuit "disregarded clear signals emanating from the state's highest court pointing" to a different interpretation of the sale ban. *Factors*, 652 F.2d at 83. Nor does its reference to a California case from 1994, which interpreted a provision of California's tax code, persuade this court that the Ninth Circuit's "holding had been superseded by a later pronouncement from state legislative or judicial sources, or that prior state court decisions had been inadvertently overlooked by the pertinent court of appeals." *Id.* (citation omitted); *see* Opp. at 7 (citing *McDonnell Douglas Corp. v. Franchise Tax Bd.*, 33 Cal. Rptr. 2d

17

129 (Ct. App. 1994)). Therefore, the Court sees no reason to withhold its "conclusive deference" to the Ninth Circuit's decision in *Éleveurs IV*, under which Plaintiff's theory of direct liability plainly fails.

    2. Accomplice Liability

Plaintiff's theory of accomplice-liability also fails as a matter of law. "A defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate" the UCL. *Emery v. Visa Int'l Serv. Ass'n*, 116 Cal. Rptr. 2d 25, 33 (Ct. App. 2002) (quotation marks and citation omitted). Plaintiff's theory of indirect liability suggests only that Defendants supplied California restaurants "with commercial quantities of foie gras that [they] know and intend will be resold in California." SAC ¶ 30. Plaintiff does not – and cannot – argue that Defendants "personal[ly] participat[ed] in" or exercised "unbridled control" over any California restaurant's subsequent sale of foie gras. *Emery*, 116 Cal. Rptr. 2d at 33 (quotation marks and citation omitted). Without more, Defendants' "[k]nowledge of, or failure to prevent, a crime is not sufficient to establish aiding and abetting liability." *Id.* at 35.

Plaintiff attempts to distinguish *Emery*, arguing that its claim "is not based on vicarious liability, but rather under an aider and abettor theory, i.e. accomplice liability." Opp. at 14. This hair-splitting is unconvincing. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007) (holding that *Emery* "precludes liability" under the UCL "both under secondary liability and aiding and abetting theories").

Therefore, the Court finds that further amendment of its complaint would be futile. *See Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 445 (2d Cir. 2022) (leave to amend appropriately

18

denied even though district court dismissed complaint without prejudice for lack of Article III standing).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. Plaintiff's Second Amended Complaint is DISMISSED without prejudice and without leave to amend.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 109 and to close the case.

Dated: March 11, 2024
       New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge